UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:24-cv-2360

**JONATHAN DRUMMOND**,

      Plaintiff,

vs.

**F45 TRAINING HOLDINGS, INC.; and**

**J & S PARTNERS, LLC, d/b/a F45 TRAINING DELAND,**

      Defendants.

_____/

## COMPLAINT

Plaintiff JONATHAN DRUMMOND, by and through undersigned counsel, sues Defendants F45 TRAINING HOLDINGS, INC., a Delaware for-profit corporation, and J & S PARTNERS, LLC, d/b/a F45 TRAINING DELAND, a Florida Limited Liability Company, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks

declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.    Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.    Plaintiff JONATHAN DRUMMOND is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.    Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from retinoblastoma, which is a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.    Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

2

7.     Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8.     Defendants are a Delaware for-profit corporation and a Florida Limited Liability Company authorized to do business and doing business in the State of Florida. Defendants own, operate, and/or control a global chain of over 1500 fitness centers, offering high-intensity, functional training workouts suitable for fitness

enthusiasts of all levels, including the training studio Plaintiff intended to patronize in the near future (and as early as December 2024 and/or early January 2025) which is located at 2621 South Woodland Boulevard, DeLand, FL 32720.

9.      Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

10.      Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.      At all times material hereto, Defendants were and still are organizations that own, operate, and/or control a chain of over 1500 global training studios under the name "F45 Training". Each "F45 Training" studio is open to the public. As the owners, operators, and/or controllers of these fitness centers, Defendants are defined as a place of "public accommodation" within the meaning of the ADA because Defendants are private entities which own, operate, and/or control "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

12.      Because Defendants operate a training studio open to the public, each of Defendants' physical locations is a place of public accommodation subject to the

requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13. Defendants also own, control, maintain, and/or operate an adjunct website, https://www.f45training.com/ (the "Website"). The Website allows users to discover contact information and operating hours for training studio locations, find the nearest fitness center using the studio locator, select and purchase membership plans online, view class schedules and book desired classes online, read information about available workouts, read customer reviews, explore blog posts featuring tips on training, wellness, and industry trends, read success stories, view and purchase F45 Training merchandise including apparel and accessories, discover the company's partners, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, learn about the company's franchise opportunities, and join the mailing list to access special offers, new workouts, and upcoming events.

14. The Website also services Defendants' physical locations by providing information on contact details, operating hours, membership plans, available workouts, class schedules, and other details that Defendants are interested to communicate to their customers.

15. Because the Website allows the public the ability to secure information about the locations of Defendants' fitness centers, discover contact information and operating hours for training studio locations, find the nearest fitness center using the

studio locator, select and purchase membership plans online, view class schedules and book desired classes online, read information about available workouts, read customer reviews, explore blog posts featuring tips on training, wellness, and industry trends, read success stories, view and purchase F45 Training merchandise including apparel and accessories, discover the company's partners, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, learn about the company's franchise opportunities, and join the mailing list to access special offers, new workouts, and upcoming events, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendants' physical locations, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendants' physical locations, as it serves as a crucial point of sale for the training studios. It allows users to make purchases of Defendants' offerings, which are also available for purchase at, from, and through their physical locations.

16.    Because the public can view and use Defendants' services through the Website, thus the Website acts as a critical point of access for Defendants' services

that are also available at Defendants' physical locations, discover contact information and operating hours for training studio locations, find the nearest fitness center using the studio locator, select and purchase membership plans online, view class schedules and book desired classes online, read information about available workouts, read customer reviews, explore blog posts featuring tips on training, wellness, and industry trends, read success stories, view and purchase F45 Training merchandise including apparel and accessories, discover the company's partners, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, learn about the company's franchise opportunities, and join the mailing list to access special offers, new workouts, and upcoming events, the Website is an extension of, and gateway to the physical locations, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical locations.

17.    At all times material hereto, Defendants were and still are organizations owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service,

privilege, and advantage of Defendants' brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

18.    Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as December 2024 and/or early January 2025), Defendants' training studio located at 2621 South Woodland Boulevard, DeLand, FL 32720, and to search for brick-and-mortar locations that are in closest proximity to Plaintiff, to discover contact information and operating hours for training studio locations, select and purchase membership plans online, view class schedules and book desired classes online, read information about available workouts, read customer reviews, explore blog posts featuring tips on training, wellness, and industry trends, read success stories, view and purchase F45 Training merchandise including apparel and accessories, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, and join the mailing list to access special offers, new workouts, and upcoming events. In the alternative, Plaintiff intends to monitor the Website in the

near future (and as early December 2024 and/or early January 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.     The opportunity to view and use Defendants' services, discover contact information and operating hours for training studio locations, find the nearest fitness center using the studio locator, select and purchase membership plans online, view class schedules and book desired classes online, read information about available workouts, read customer reviews, explore blog posts featuring tips on training, wellness, and industry trends, read success stories, view and purchase F45 Training merchandise including apparel and accessories, discover the company's partners, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, learn about the company's franchise opportunities, and join the mailing list to access special offers, new workouts, and upcoming events, and more from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help select a fitness center, by comparing offerings, prices, and services. Plaintiff

may look at several dozen websites to compare available memberships, prices, available workouts and class schedules.

21.    Beginning in September 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and online offers to educate as to the available memberships, services being provided, learn about the training studio locations, check operating hours, and read customer reviews. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

22.    As a frequent user of online services and someone who enjoys physical activities and strives to stay healthy and fit, Plaintiff decided to conduct a Google search for nearby fitness centers to find one suitable for him. On or about September 12, 2024, using the NVDA screen reader, he visited the Defendants' website to obtain information about their training studios and membership plans. Upon visiting the website, he encountered multiple accessibility issues, including an automatic popup, the absence of a bypass block, and numerous unlabeled links. The "Start a Trial" button was unfocusable using the Tab key, and no instructions were provided on how to reach it with the arrow keys. Even though the visually impaired user managed to reach the button using the arrow keys, the element failed to properly announce its role. Attempting to access information about the trial, Plaintiff encountered multiple unlabeled links, each of which was announced only as 'link,'

further confusing him. These accessibility issues prevented Plaintiff from obtaining information about a nearby training studio and selecting a preferred membership plan.

23.    Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendants' Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Plaintiff was disoriented when the automatic pop-up window appeared on the web page. Plaintiff, as a legally blind user, had significant difficulty knowing when automatic visual context change had occurred, such as a new window popping up;

b. "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

c. Plaintiff could not access the "Start a Trial" button using the Tab key, and no instructions were provided for using the arrow keys on the website due to improper element construction (the <a> tag was used without the "href" attribute);

d. Interactive elements that behaved as "buttons" were not programmatically written correctly. Instead of using a "role" attribute, they were built by tags such as <a>. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus. The "Start a Trial" button was constructed using the <a> tag without the "role" attribute to specify the element's correct role;

e. Prerecorded video-only found on the home page. Text transcript or audio track for a silent video was not provided and Plaintiff did not receive any information from the non-text content placed on the page;

f. The images on the homepage of the website did not have alternative text. Plaintiff did not receive any description of the non-text content;

g. Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose. For example, links like "Learn more" did not provide enough context;

h. Social media icons were used as links without appropriate alternative text. Plaintiff was not informed about the purpose of the graphic icons;

i. The social media links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

j. Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

k. Plaintiff encountered repetitive link texts that were announced separately from their context. These links did not provide helpful information and disoriented Plaintiff. For example, the "View Now" links on every type of workout lacked context and failed to inform the user about their purpose;

l. Search suggestions that appeared below the "Search By Location" bar were not keyboard focusable. Legally blind users should be able to navigate through the search suggestions using the keyboard "tab" or "arrow" keys;

m. Plaintiff was not aware of the address suggestions after entering a search term, such as the name of a city, into the address field. A status update, such as a brief text message indicating the presence of address suggestions, was not provided, even though the content of the page was updated and suggestions were displayed;

n. The buttons for selecting a training studio for the trial could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive elements using arrow keys. Plaintiff did not know about the interactive elements from the page;

o. Plaintiff was unable to determine if the form fields were mandatory ("Required"). The lack of detailed instructions while filling in the form, prevented Plaintiff from successfully submission of personal information.

24.     Accordingly, Defendants' Website was incompatible with Plaintiff's screen reading software and keyboard.

25.     The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same online experience, with the same access to the offers and services, as provided at the Website and in the physical locations as the non-visually disabled public.

26.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' training studio located at 2621 South Woodland Boulevard, DeLand, FL 32720, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendants due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because of the nexus between Defendants' physical locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' physical locations for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

28.     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the

Website by individuals with disabilities.

32.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

33.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

35.     Defendants have not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36.     Defendants have not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of using Defendants' services offered

on the Website and in the physical locations from their homes.

39.    Defendants thus have not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the training studios in contravention of the ADA.

40.    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41.    The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42.    Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.    Defendants are, and at all relevant times have been, aware of the need to provide full and equal access to all visitors to the Website.

44.    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive

relief is his only means to secure adequate and complete redress from Defendants'
unlawful and discriminatory practices in connection with the Website's access and
operation.

46.    Notice to Defendants is not required because of Defendants' failure to
cure the violations.

47.    Enforcement of Plaintiff's rights under the ADA is right and just
pursuant to 28 U.S.C. §§2201 and 2202.

48.    Plaintiff has retained the undersigned attorneys to represent him in this
case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

49.    Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.    Pursuant to 42 U.S.C. §12181(7)(E), Defendants represent a public
accommodation under the ADA and thus is subject to the ADA.

51.    Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the
ADA because it provides the general public with the ability to view Defendants'
services, discover contact information and operating hours for training studio
locations, find the nearest fitness center using the studio locator, select and purchase
membership plans online, view class schedules and book desired classes online, read
information about available workouts, read customer reviews, explore blog posts
featuring tips on training, wellness, and industry trends, read success stories, view
and purchase F45 Training merchandise including apparel and accessories, discover

the company's partners, access answers to frequently asked questions, read company news, explore career opportunities, read the company's terms and policies, learn about the company's franchise opportunities, and join the mailing list to access special offers, new workouts, and upcoming events. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendants' training studios. Further, the Website serves to augment Defendants' physical locations by providing the public information about the studios and by educating the public as to Defendants' available services offered through the Website and in, from, and through the physical locations.

52.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or

accommodations."

54.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendants' Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendants have made available to the public on the Website and in the physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring the presence of a bypass block, making sure that link texts are descriptive, and ensuring that interactive elements are focusable using the Tab key or have instructions for using the arrow keys. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

60.     Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations within the Website are ongoing.

61.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an

effective method of making visually delivered material available to individuals who are blind or have low vision.

63.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

66.    As a direct and proximate result of Defendants' failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendants' Website and its physical locations.

67.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendants to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendants' policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical locations through the Website.

b)  Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical locations and becoming informed of and purchasing Defendants' services, and during that time

period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical locations.

69.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that Defendants' Website is in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the

universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to their Website;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Website to be fully accessible to the visually

---

[1]   or similar.

disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

DATED:  December 28, 2024.


**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By:  _____*/s/ Aleksandra Kravets, Esq.*
        Aleksandra Kravets, Esq.
        FBN: 120562